[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action brought by Morgan Buildings Spas, Inc. of Dallas, Texas against Dean's Stove and Spa, Inc., a Connecticut Corporation with an office and principal place of business in Plantsville, Connecticut, and also against Dean W. Michanczyk of Plantsville, Connecticut, individually.
The action is brought in three counts. The first count as to Dean's Stove and Spa, Inc. alleges that the plaintiff shipped various spas and miscellaneous spa parts to the defendant at the defendant's request; the total amount due for goods shipped is $51,580.19, a demand has been made for same and the defendant has neglected and refused to pay.
A second count also as to Dean's Stove and Spa, Inc. alleges that at the request of the defendant the plaintiff furnished spas and miscellaneous spa parts to the defendant for which the defendant agreed to pay the reasonable value which was $51,580.19 and further that the defendant has neglected and refused to pay said sum and is unjustly enriched thereby.
The third count is as to Dean W. Michanczyk, individually. This count alleges that the defendant, Dean W. Michanczyk, personally guaranteed all of the obligations of the defendant, Dean's Stove and Spa, Inc. and is liable to the plaintiff for the sum of $51,580.19.
Whereas, the defendant until midway in the trial treated the first count as alleging a contract and the second count as CT Page 9506 alleging quantum meruit the plaintiff maintained at that time during argument that the first count was in quantum meruit and the second count was unjust enrichment.
The defendant filed an answer in which it left the plaintiff to its proof as to the first count and denied the allegations of the second and third counts. It then filed two special defenses.
In the first special defense the defendant alleges that the plaintiff has been paid in full and in the second special defense the defendant alleges that there has been an accord and satisfaction of a disputed debt.
The defendant, Dean W. Michanczyk, had been doing business with the plaintiff since 1991 and was a sole proprietorship from 1991 until 1994 at which time it was incorporated under the current name. As a sole proprietorship his business was known as Dean's Stove Shop. From 1991 until after the events in this case, the location of the business was the same (i.e. 75 West Main Street, Plantsville, CT).
In the usual course of business Mr. Michanczyk always ordered spas and spa materials from Morgan through a Mr. Shillago, whom he knew as the national sales manager and with whom he always dealt on the telephone.
Shillago would apprise Michanczyk of the cost and availability of various models. He would then transmit the order to Morgan's manufacturing plant in Walnut Ridge, Arkansas. At this stage a worksheet would be generated from which a waybill/bill of lading would be made up.
A waybill according to Ballentine's Law Dictionary is "a paper containing a list of the goods in a shipment by carrier and instructions respecting the shipment, in possession of the carrier's employees, or the means of transportation which caries the shipment": in this case a truck. A bill of lading is "a written acknowledgment by a carrier of the receipt of goods described therein and an agreement to transport them to the place specified therein and deliver them there to the person named therein or his order."
Morgan always demanded payment of any material that it shipped. Dean's Stove Shop did not have the capital to make such payments before the spas were sold and so acted through a CT Page 9507 flooring company known as Transamerica Finance. When Dean's ordered material, Morgan would contact Transamerica and Transamerica would pre-approve the purchase. Morgan would then notify Dean's and ship the material via an outside trucker providing a "waybill/bill of lading" listing the material by serial number and model number. When the material was loaded, the waybill would be signed by the truck driver. When the material was delivered, it would be signed by a representative from Dean's. Upon notification by Dean's that the goods had been delivered Transamerica would pay Morgan. Dean's was never billed by Morgan nor was Morgan ever paid by Dean's.
Once a month Transamerica sent an agent to check the material at Dean's that had been sent by Morgan to Dean's on the preapproval of Transamerica.
If an item was still there, it remained on the agent's list, a copy of which was used by Dean's as an inventory. If it was not present, defendant had to pay Transamerica immediately. When Dean sold a spa or some material to a customer it would pay Transamerica the cost of the item that had been sold plus interest on same listing it on a sales and remittance slip.
The plaintiff claimed that Dean's had ordered sixteen spas in March of 1995. The defendant agreed that it had ordered sixteen in March. It claimed, however that two were delivered in March and paid for. The plaintiff agreed as to the two but maintained that the balance of fourteen were shipped in September to Dean's but never paid for. Plaintiff, in the opinion of the court, could not prove that any were delivered to defendant. But defendant admitted that it received seven and was able to prove that it paid for them. It maintained that it never did get all the spas on the waybill.
The court heard this case on May 21 and May 22, 1998. Upon completion of the closing arguments of counsel the court recessed, examined its notes and the exhibits, returned to the bench and entered an opinion that the plaintiff has failed to prove the first and second counts of its complaint by a fair preponderance of the evidence. The court made a brief statement to the effect that the records are much too incomplete, much too divergent and inaccurate for this court to arrive at a conclusion, that the plaintiff had met its burden of proof.
The court also gave an opinion that in the light of its CT Page 9508 holding with respect to the first and second counts the third count had become moot and therefore, judgment was entered for the defendant as to all three counts.
Out of an abundance of caution and because this case was fraught with considerable confusion from the beginning to the end, inaccuracies and discrepancies and inept and very poor recordkeeping, the court decided that the parties were entitled to a more complete statement of its reasons for its holding and therefore agreed to enter an articulation of its decision.
The court has examined all of the exhibits several times and a complete transcript of this trial and finds that it must still arrive at the same conclusion — that the plaintiff has failed to prove counts one and two by a fair preponderance of the evidence.
The plaintiff introduced a total of twelve exhibits. No one of them or all put together leads to the conclusions alleged in its first and second counts.
At the end of the plaintiff's case the defendant made a motion to dismiss for failure to make out a prima facie case. At this point the court was tempted to grant the motion, but in the light of the special defense that the plaintiff had been paid and the implication that there might have been a delivery, the court decided to deny the motion and allow evidence to be offered by the defendant.
There was confusion in this case from the oversimplified pleadings to the very end of the case.
It was begun as a simple debt collection with an affidavit of debt and was never amended or otherwise clarified or expanded when opposition was encountered.
The plaintiff's principal exhibits offered to substantiate its claims were a waybill/bill of lading; what purported to be a carbon copy of a check and a paid bill for the delivery of some spas and a copy of a computer printout labeled a repair history. The waybill was inconclusive in every respect and full of inaccuracies and unexplained writings and omissions. It appeared to list fourteen spas by a serial number and a model number. The original apparently had been typewritten. It indicated that these were being shipped by Printco, a trucker and contained a signature over the heading "driver's signature." There were many CT Page 9509 blanks on it which were not filled out which would appear to have been of importance in understanding its significance. The most important of these was a line which contained the label "customer acceptance" which had not been filled out. Written on this bill of lading in red ink were many numbers. The number 620033 appeared in the upper left hand corner in red ink as the customer contract number. The same number appeared opposite the serial number AA102967. There was considerable confusion as to the significance of these ink numbers when they were placed on the form, and what they represented. At the very most this waybill appeared to the court to stand for no more than the fact that a driver from Printco, a trucker, agreed that these items had been loaded on his truck for shipment to Dean's Stoves.
The plaintiff also offered as Exhibit 2, a two-page exhibit. One page, a yellow sheet which purported to be a carbon copy of a check made payable to Morgan Buildings Spas, Inc. for $1,755.95 referred to the same number as the waybill being number 928657A. This check is dated October 13, 1995. There is no indication on this carbon copy that is was signed. Attached to it is what appears to be an invoice from Printco charging $1,755.95 for a "truckload of freight" shipped on September 12, 1995 with a delivery date of September 14, 1995. Whereas the check is dated October 13, 1995, this bill is stamped "paid October 11, 1995."
Exhibit No. 3 is a photocopy of a computer printout labeled "repair history." It contains six pages plus a copy of the bill of lading. These were apparently offered to show that at least these six spas had been delivered. There is no evidence of the source of the information on this exhibit. It is unsigned and dated November 5, 1996 and contains the serial numbers of six of the spas which appear on Exhibit 1 and purports to indicate certain warranty work that was done on these six spas. Each has a serial number, a contract number which is 620033, the same as appears on the waybill in red ink but each has in addition another number such as 5, 3, 2 or K and H and B but no explanation as to the meaning of these letters was offered. Each has a delivery date, two of which are the same as that which appears on the waybill as the date of shipment. Others are for November and December of 1995 and one is for March of 1996. All of these were introduced by Mrs. Oleta Kaes of Garland, Texas. In 1995 she was the Department Manager of Sales Operations which included accounts receivable contract processing, driver payroll and inventory and had been with the company for 18 1/2 years. She had no personal knowledge of any of the information introduced CT Page 9510 through the business records which she had obtained from the files of the company.
Exhibit 4 consisted of four page of invoices all dated November 5, 1996. These were prepared by Mrs. Kaes as invoices for the materials which Morgan claims are missing and for which they were not paid. These added to the confusion however, by containing an invoice number of 620033, a customer number of 620033, and a contract number of 620033. They were the first indication of what the plaintiff was claiming as to the cost of each of these spas.
Mrs. Kaes testified from her general knowledge of the procedures used in the company but with reference to the actual case before the court she admitted that all of her information came from the records of the company and she agreed that if these records were inaccurate her information would be inaccurate. Exclusive of further information offered by the defendant in its case in chief, at the conclusion of the plaintiff's case it was evident that the records offered by plaintiff were full of inaccuracies, discrepancies and confusion in addition to a great amount of confusion caused by continuous objections of the defendant's counsel and by insistence upon a voir dire of virtually every exhibit offered by opposing counsel. These inaccuracies and discrepancies caused considerable confusion and doubt as to the significance of these exhibits. At this point in the opinion of the court evidence which was intended as proof of the plaintiff's case was left hanging in mid air. If it were not for the implied admission of delivery by the defendants, as indicated earlier, the court might well have granted the defense motion to dismiss for failure to make out a prima facie case. At this point the plaintiff had not shown delivery of the fourteen spas which it claims and had not shown that at the request of the defendant it furnished spas and miscellaneous spa parts to the defendant for which the defendant agreed to pay the reasonable value thereof.
Exhibit 8, offered by the plaintiff, a copy of a fax from Transamerica to Morgan, contains a list of the fourteen spa serial numbers appearing on the waybill and a statement that Transamerica had not funded them for Dean's. If it had any significance at all, it would be that it led to the conclusion that Dean's Stoves had not received any of the fourteen spas enumerated in said fax. CT Page 9511
With respect to the third count, the plaintiff offered a photocopy of an agreement as to which there was considerable difficulty since apparently the second page thereof had not been disclosed to the plaintiff. In the opinion of the court, as indicated in its original ruling, the question of the guarantee by the individual defendant becomes moot in view of the court's opinion with respect to counts one and two.
The defendant alleged two special defenses. As to the second, accord and satisfaction, no evidence was offered. In the first special defense the defendant stated that as to all counts the plaintiff has been paid in full.
No witnesses were offered by the plaintiff from Morgan as to the ordering of goods; none from the trucker as to delivery and none from Transamerica.
As against the inconclusive hearsay evidence of Mrs. Kaes offered by the plaintiff, based solely on inaccurate and incomplete records, the defendant offered the direct evidence of Mr. Michanczyk together with his business records. In addition to pointing out many other numerous discrepancies and inaccuracies in the recordkeeping of the plaintiff he clarified the actual business practice which was quite similar to that testified to by Mrs. Kaes but in more detail. He then admitted that he had received seven of the fourteen spas claimed by the plaintiff. He showed to the satisfaction of the court that he had paid Transamerica for same using his ledgers and Transamerica's floor sheets.
With respect to the fax that Transamerica had apparently sent to the plaintiff indicating that none of the fourteen spas mentioned in the original bill of lading had been paid for by Transamerica Mr. Michanczyk pointed out that the seven spas which he admits that he received had the same last four numbers but a different prefix from that used by Morgan. He pointed out that once a month Transamerica sent a person to examine the items for which it had given preapproval and which they had been notified had been delivered and listed every item that Dean had received from Morgan and as to which Transamerica had agreed to finance. Whereas, Morgan used a six-figure serial number beginning with 10, for some reason, totally unexplained by either party, Transamerica used the letters NU, however, it used the same last numbers as did Morgan and this was done with respect to other items as well as those in question in this case. Thus, Mr. CT Page 9512 Michanczyk reasoned that the fax statement by Transamerica that it had not financed any of these numbers using the six number serial numbers given by Morgan was probably literally true, whereas in fact Dean's Stoves had paid Transamerica for the seven items which they admitted receiving.
In this case each party accused the other of failure to disclose certain documents in reply to requests for production. The court found in each case that the requests were not clear and neither party had been guilty of intentional misconduct nor prejudicious behavior.
The court is aware that it allowed a number of items to be marked as exhibits which were doubtful. It did so in an effort to be fair to each party and allow it to make out as complete a case as possible. The court is of the opinion that neither party was prejudiced.
Judgment may enter for the defendant on counts one, two and three.
Robert J. Hale State Judge Referee